James L. Colvin, III, #13422
7134 S. Yale Avenue, Suite 900
Tulsa, Oklahoma 74136
Telephone:      (918) 494-5905
Facsimile:      (918) 494-2847
jcolvin@secresthill.com
*Attorneys for Plaintiff*

---

## IN THE UNITED STATES DISTRICT COURT,

## IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LYNN ALLEN JOHNSON, an individual,<br><br>      Plaintiff,<br><br>v.<br><br>USANA HEALTH SCIENCES, INC., a Utah corporation; USANA, INC., a Utah corporation; USANA ACQUISITION CORP., a Utah corporation; USANA SENSÉ COMPANY, INC., a Utah corporation<br><br>      Defendants. | **COMPLAINT AND JURY DEMAND**<br><br><br><br><br><br>Case No.: 2:17-cv-652-PMW<br><br>Magistrate Judge: Paul M. Warner |

Plaintiff Lynn Allen Johnson ("Johnson") hereby complains of Defendants USANA Health Sciences, Inc., USANA, Inc., USANA Acquisition Corp., USANA Sensé Company, Inc. (collectively "USANA" or "Defendants") as follows:

### SUMMARY OF THE CASE

1.      The above captioned action (the "Action") is brought by Johnson as a result of

Defendants' acts complained herein.

2.      Beginning in October 1997, Johnson was an independent contractor with USANA, also referred to as an "associate," that sold USANA's products and recruited new associates to engage in the USANA direct selling business opportunity.

3.      Defendants are, and at all times relevant to this Action, a network marketing company that utilizes an independent sales force to sell nutritional supplements, personal care, and food products throughout the United States, Canada Australia, New Zealand, Hong Kong, China, Japan, Taiwan, South Korea, Singapore, Mexico, Malaysia, the Philippines, the Netherlands, the United Kingdom, Thailand, France, Belgium, Colombia and Indonesia.

4.      Johnson brings this Action against Defendants for money damages, including treble damages, as a result of Defendants' violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2 and the Utah Antitrust Act, Utah Code Ann. §§ 76-10-3101 *et seq*., breach of contract, fraudulent concealment, fraud in the inducement, and declaratory relief.

5.      As more fully described below, the Defendants contracted, combined, and conspired to use their collective market power to recruit, contract with, and collect the personal and private data of individuals engaged in the network marketing industry within the United States geographic area (the "U.S. Market") to unreasonably restrain competition within the marketplace by placing onerous restrictive covenants on independent contractors to monopolize the personal data of individuals willing to engage in the network marketing industry as a primary vocation and source of income.

6.      Johnson and other network marketers were, as a direct consequence of Defendants' conduct, effectively unable to compete within the U.S. Market against, USANA, other network marketers and/or other direct selling companies with respect to the recruitment of

individuals to other direct selling opportunities and the sale of products to consumers situated within that market, and competition in Utah, and the U.S. as a whole, has suffered substantial injury as a result.

## JURISDICTION AND VENUE

7.      Johnson brings this action pursuant to Sections 4(a) and 16 of the Clayton Act (15 U.S.C. §§ 15(a) and 26, respectively) to recover damages and costs of suit, including reasonable attorneys' fees, as the result of Defendants' violations of Section 1 and 2 of the Sherman Act, fraudulent concealment, fraud in the inducement, and breach of contract resulting in damages to Johnson in excess of $75,000.

8.      Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331, 1332, and 1337 as this action involves a federal question arising under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, respectively, pendent and/or ancillary Utah state law claims arising out of a common nucleus of operative fact, is a controversy exceeding $75,000 exclusive of fees and costs, and between citizens of different states.

9.      Personal jurisdiction over all Defendants comports with the United States Constitution.

10.      Venue is proper in this Court pursuant to Sections 4(a) and 12 of the Clayton Act (15 U.S.C. §§ 15(a) and 22, respectively) and 28 U.S.C. § 1391 because at all relevant times Defendants resided, transacted business, were found or had agents in Utah, and because a substantial part of the events giving rise to Johnson's claims occurred, and a substantial portion of the affected interstate trade and commerce described below was carried out, in Utah.

## PARTIES

11.      Johnson is an individual who is a resident of the State of Florida having an

3

address, at 456 Bouchelle Drive, Unit 102, New Smyrna Beach, Florida 32169.

12.     At all times relevant to this action, Johnson, was an associate and independent contractor that marketed, sold, and recruited prospective associates to market and sell products for Defendants in the U.S. Market.

13.     Defendant USANA Health Sciences, Inc. is a registered Utah corporation with its principal place of business at 3838 West Parkway Boulevard, Salt Lake City, Utah, 84120

14.     Defendant USANA, Inc. is a registered Utah corporation with its principal place of business at 3838 West Parkway Boulevard, Salt Lake City, Utah, 84120

15.     Defendant USANA Acquisition Corp. is a registered Utah corporation with its principal place of business at 3838 West Parkway Boulevard, Salt Lake City, Utah, 84120

16.     Defendant USANA Sensé Company, Inc. is a registered Utah corporation with its principal place of business at 3838 West Parkway Boulevard, Salt Lake City, Utah, 84120.

17.     USANA is a producer and supplier of nutritional supplements, personal care products and food products in the U.S. Market and locations across the globe.

18.     USANA produces and/or sells nutritional supplements, personal care products and food products and such other materials from one or more locations within the State of Utah.

## CO-CONSPIRATORS

19.     Various other persons, firms or entities not yet named as Defendants in this action have participated as co-conspirators with Defendants in the offenses alleged in this Complaint and have performed acts and made statements in furtherance of the Defendants' conspiracy to manipulate network marketing in an anti-competitive fashion. Evidence of the identity of co-conspirators is in the possession of Defendants. When knowledge of such co-conspirators becomes known to Johnson, she will amend this Complaint to add such individuals and entities

or Defendants as parties to this Action.

## INTERSTATE TRADE AND COMMERCE

20.     At all relevant times to this Action, upon information and belief, Defendants have contracted with and/or conducted business with associates within the  U.S. Market.

21.     Based on these facts, the activities of Defendants alleged herein occurred within interstate commerce, had (and continue to have) a substantial effect on interstate commerce, and have unreasonably restrained (and continue to restrain) interstate trade and commerce.

## RELEVANT PRODUCT MARKETS

22.     There is one relevant product market in this instant action: the personal contact information, i.e., cell phone numbers and e-mail addresses, of individuals who engage in network marketing as a primary vocation. The relevant geographic market is the U.S. Market.

## MARKET POWER

23.      Upon information and belief, the Defendants possess significant market share of personal contact information of individuals who engage in network marketing as a primary vocation in the U.S. Market with at least 11,380 such individuals in their organization.

24.      Defendants consequently hold considerable market power, have been, and are capable of dictating the consolidation, privatization, commoditization, and restriction of personal contact information of individuals who engage in network marketing as a primary vocation.

## GENERAL ALLEGATIONS

25.     The foundational element of direct selling and network marketing is the distribution of products and/or services through a person to person network of sellers and consumers as opposed to online or brick and mortar retail outlets.  This mode of selling relieves the product selling company of the burdens of store overhead, sales employees, and marketing

expenses by imposing those burdens on an independent sales force of contractors.

26.     As part and parcel of the direct selling scheme, independent contractors, usually referred to as associates or distributors, broker sales between the consumer by obtaining the products and/or services at wholesale costs and then selling the product and/or service at the retail cost thereby allowing the distributor the profit margin on the product.

27.     In the event an independent contractor completes enough sales to consumers, they may be entitled to additional compensation in the form of commissions on the sales.  These independent contractors earn compensation through the volume of sales of the direct selling company's products and/or services.

28.     Yet another earning level in direct selling is through organization building.  An independent contractor that engages in actively recruiting individuals new to the business opportunity is an "organization builder" within the direct selling company.  The organization builder is entitled to additional compensation through the sales of independent contractors enrolled under them in the direct selling company.

29.     A group of independent contractors enrolled under a sponsoring independent contractor is commonly referred to as an organization builder's "downline."  An organization builder's downline is created through the sole efforts of the organization builder to create interest in the direct seller's products and/or services, hold meetings, mentor new independent contractors, and promote the benefits of being an independent contractor for the direct selling company.

30.     Johnson became a USANA associate in October 1997.  At the time Johnson contracted with USANA as an associate distributor, there were no restrictive covenants on associates similar to the one for which she was terminated.

31.     As is common in the industry, Johnson was sponsored into the USANA opportunity by her daughter.  The majority, if not the supermajority, of sponsor and new recruit relationships are family members or personal friends.

32.     By 2006, Johnson had achieved the rank of Five Star Diamond and was the Presidential Award Winner for USANA in years 2006 and 2007 for having the biggest organizational growth worldwide in both years.

33.     For the duration of her time as a USANA associate, Johnson was an exemplary distributor and organization builder who often appeared with USANA executives at events to tout the rewards of the USANA opportunity.

34.     On June 21, 2011, USANA terminated Johnson's Five Star Diamond distributorship for being on a telephone call wherein the benefit plan of another network marketing company was discussed.

35.     USANA based its termination on Policy 3.6 of the Policies and Procedures as they were in place at that time.  Importantly, these policies and procedures were not in place at the time Johnson contracted to be a distributor with USANA.

36.     USANA did, however, "offer" to rescind its termination of Johnson's distributorship if she made a "voluntary" and public reassurances of her commitment to USANA despite her never having joined another network marketing company or recruiting anyone to a competing network marketing company.

## INSTANCES OF DEFENDANTS' ILLEGAL AND COLLUSIVE CONDUCT

37.     Beginning in at least January 1, 2010, if not earlier, and continuing on through the date of the instant Action (the exact dates being unknown at this time), upon information and belief, Defendants, in connection with other unknown conspirators that may include distributors

7

and/or other direct selling company(s), contracted, combined, and/or conspired to use their collective market power of personal contact information of individuals, i.e., cell phone numbers and personal e-mail addresses, who engage in network marketing as a primary vocation in the U.S. Market in an attempt to restrain network marketers from free movement within the marketplace by contracting with them and then instituting increasingly onerous terms to subsequent "contracts" for which no consideration or bargain was afforded to the distributors.

38.     Despite that Defendants did not participate in the gathering, assembly, or recruitment of the downline members' personal contact information, Defendants maintain Johnson and other associates may not contact other distributors whose information they either already know or collected and assembled themselves, or speak about other network marketing opportunities to those downline.  Effectively, Defendants, and others, retain the organization of an independent contractor as their own and preserve them through aggressive termination actions and litigation designed to prevent the distributor from presenting competing opportunities to the very sales organization they built.

39.     Upon information and belief, the restraint of trade is effected pursuant to an explicit agreement between Defendants to retain distributors they had no involvement in recruiting to maintain the consumption of the direct sellers' products and sales and increase company profit without paying commissions and profits to the downline sponsor.

40.     For the purpose of forming and effectuating this contract, combination or conspiracy, Defendants, upon information and belief, did those things that they combined and conspired to do, including among others, the following:

> a.     participated in meetings and conversations to discuss restrictive covenants to preserve the personal contact information of individuals,

i.e., cell phone numbers and personal e-mail addresses, who choose network marketing as a primary vocation in the U.S. Market to enforce against distributors like Johnson; and

b.    agreed to conceal and keep secret their illegal agreements.

41.    Upon information and belief, Defendants initial discussions and agreements to conspire regarding such restraint of trade of restraint of trade has naturally to a pattern, for years, if not longer, of close collaboration among such competitors with respect to all facets of the Defendants' respective enrollment, management, and enforcement of restrictive covenants against distributors within the U.S. Market.

42.    Defendants illegal and collusive acts have been caused by a horizontal collaboration among competing direct selling companies in the U.S. Market, including Defendants, who have used their collective market power to gain agreements or understandings with one another relating to the enrollment of distributors, restrictive covenants, and enforcement of restrictive covenants perpetrated amongst and between distributors in the U.S. Market.

43.    Moreover, Defendants, through enforcing intentionally onerous restrictive covenants to Johnson and other distributors is impermissible and unnecessarily restricts competition in the Utah Market.

44.    Defendants and their co-conspirators have engaged in the activities described in the forgoing paragraphs in furtherance of their antitrust violation and for the purpose of effectuating the unlawful contract, combination and/or conspiracy, and the illegal restraints of trade described herein.

## EFFECTS OF DEFENDANTS' ILLEGAL AND COLLUSIVE CONDUCT

45.    Defendants' contract, combination and/or conspiracy, and monopolization, has

had the following effects, among others:

    a.    Defendants and their co-conspirators are amassing and retaining distributors as a result of artificial, disparate, and non-competitive restraints of trade;

    b.    Johnson and other distributors were deprived of the benefit of free and open competition in the U.S. Market in the network marketing industry;

    c.    competition amongst direct sellers and distributors in network marketing in the U.S. Market was restrained, suppressed and/or eliminated;

    d.    costs of exiting one direct seller and entering the U.S. Market relative to the supply of distributors who choose network marketing as a primary vocation, and, thus, to network marketing has been significantly increased, which has impeded competition related thereto and erected artificial barriers to entry into network marketing in the U.S. Market; and

    e.    information that would enable potential distributors in the U.S. Market to make informed comparisons between competing direct selling companies has been suppressed or restrained.

46.    As a proximate result of Defendants' antitrust violations, Johnson, like other distributors competing in the U.S. Market, was injured and financially damaged in her business and property, in that, among other things, she was forced to abandon the downline organization she developed over a thirteen-year period and start a new organization in a new direct selling company, among other things.

47.     As a result, Johnson suffered lost income and increased investment costs in marketing and recruiting a new downline organization in order to continue operating her business and competing within the U.S. Market.

48.     Upon information and belief, other distributors have been forced to abandon their downline organizations and create new organizations at new direct selling companies and suffer damages and incur similar costs to create the organizations.

## FIRST CAUSE OF ACTION
### Violations of the Sherman Act

49.     Johnson realleges and incorporates by reference the allegations set forth in the paragraphs 1 through 48.

50.     Collectively, the Defendants hold a dominant position and possess monopoly power, or attempting to possess monopoly power, in the U.S. Market for distributors that choose network marketing as a primary vocation which, by virtue of their entering into agreements or understandings with one another to effect the same, are sufficient to restrain trade of distributors with onerous restrictive covenants within the U.S. Market, and actually restrict competition.

51.     The purpose and effect of the Defendants' contracts, combinations and/or conspiracies has been to illegally restrict competition in the network marketing industry in the U.S. Market to Johnson and other network marketers, among others.

52.     By engaging in the illegal and collusive activities described herein, Defendants have unreasonably restrained competition in the following ways, among others:

a.     Defendants and their co-conspirators are amassing and retaining the personal contact information of individuals, i.e., cell phone numbers and personal e-mail addresses, who engage in network marketing as a primary vocation in the U.S. Market distributors in the U.S. Market as a

result of artificial, disparate, and non-competitive restraints of trade;

b. Johnson and other network marketers were deprived of the benefit of free and open competition in the U.S. Market for the personal contact information of individuals, i.e., cell phone numbers and personal e-mail addresses, who engage in network marketing as a primary vocation;

c. costs of re-entry into the U.S. Market relative to the supply of a new entrant has been significantly increased, which has impeded competition related thereto; and

d. information that would enable distributors in the U.S. to make informed make informed comparisons between competing direct selling companies has been suppressed or restrained.

53. By engaging in the illegal and collusive activities described in this Complaint, Defendants have burdened, and continue to burden, competition among network marketers in the U.S. Market without advancing any laudable or legitimate public interest.

54. By engaging in the illegal and collusive activities described in this Complaint, Defendants have placed, and continue to place, a burden on interstate commerce, as evidenced among network marketers throughout the U.S. Market and internationally.

55. By engaging in the illegal and collusive activities described in this Complaint, Defendants are engaged in an impermissible restraint of trade, a per se violation under Section 1 of the Sherman Act, 15 U.S.C. § 1.

56. By engaging in the illegal and collusive activities described in this Complaint, Defendants have benefitted financially from the ability to retain the personal contact information of individuals, i.e., cell phone numbers and personal e-mail addresses, who engage in network

marketing as a primary vocation in the U.S. Market and restrict the free movement of distributors thereby preserving the consumption and sales of the direct sellers' products as a group generating millions of dollars more than Defendants would generate in a free and open market for distributors.

57.     As a direct result of Defendants' violations of the Sherman Act, Johnson has suffered substantial loss and damage to her trade and business, in an amount to be proven at trial, and is entitled to recover treble damages and costs of suit, including reasonable attorneys' fees pursuant to Section 4(a) of the Clayton Act, 15 U.S.C. § 15(a).

## SECOND CAUSE OF ACTION
### Violations of the Utah Antitrust Act

58.     Johnson realleges and incorporates by reference the allegations set forth in the paragraphs 1 through 57.

59.     Collectively, the Defendants hold a dominant position in the U.S. Market and surrounding areas which, by virtue of their entering into agreements with one another to effect the same, are sufficient to restrain trade in the network marketing industry within the U.S. Market, and actually restrict competition.

60.     Defendants, in connection with their enrolling and contracting with distributors, have contracted, combined, and/or conspired to use their collective market power of personal contact information of individuals, i.e., cell phone numbers and personal e-mail addresses, who engage in network marketing as a primary vocation in the U.S. Market to restrain the movement of distributors within the U.S. Market.

61.     The purpose and effect of Defendants' contracts, combinations and/or conspiracies has been to illegally restrict competition in the network marketing industry in the U.S. Market to Johnson and other network marketers, among others.

13

62.     By engaging in the illegal and collusive activities described herein, Defendants have unreasonably restrained competition in the following ways, among others:

      a.      Defendants and their co-conspirators are amassing and retaining the personal contact information of individuals, i.e., cell phone numbers and personal e-mail addresses, who engage in network marketing as a primary vocation in the U.S. Market distributors as a result of artificial, disparate, and non-competitive restraints of trade;

      b.      Johnson and other network marketers were deprived of the benefit of free and open competition in the U.S. Market for network marketers;

      c.      costs of re-entry into the U.S. Market relative to the supply of a new entrant has been significantly increased, which has impeded competition related thereto; and

      d.      information that would enable distributors in the U.S. to make informed make informed comparisons between competing direct selling companies has been suppressed or restrained.

63.     By engaging in the illegal and collusive activities described herein, Defendants have burdened, and continue to burden, competition among network marketers in the U.S. Market without advancing any laudable or legitimate public interest.

64.     By engaging in the illegal and collusive activities described herein, Defendants have placed, and continue to place, a burden on interstate commerce, as evidenced among network marketers and direct sellers throughout the U.S. Market and surrounding geographic areas.

65.     By engaging in the illegal and collusive activities described herein, Defendants

are engaged in violations the Utah Antitrust Act, recently amended as Utah Code Ann. § 76-10-3104.

66.     As a direct result of Defendants' violations of the Utah Antitrust Act, Johnson has suffered substantial loss and damage to her trade and business, in an amount to be proven at trial, and is entitled to recover treble damages and costs of suit, including reasonable attorneys' fees pursuant to Utah Code Ann. § 76-10-3109.

**THIRD CAUSE OF ACTION**
**Breach of Contract**

67.     Johnson realleges and incorporates by reference the allegations set forth in the paragraphs 1 through 66.

68.     In October 1997, Johnson and USANA entered into a contract for Johnson to distribute USANA's products and for Johnson to receive commissions on sales made by her or downline members, would receive commissions for her lifetime, her company would be transferable and devisable, and her descendants would be able to receive commissions after her lifetime (the "Contract").

69.     By 2006, Johnson had achieved the rank of Five Star Diamond and was the Presidential Award Winner for USANA in years 2006 and 2007 for having the biggest organizational growth worldwide in both years.

70.     For the duration of her time as a USANA associate, Johnson was an exemplary distributor and organization builder and often appeared with USANA executives at events to tout the rewards of the USANA opportunity.

71.     On June 21, 2011, USANA terminated Johnson's Five Star Diamond distributorship for being on a telephone call wherein the benefit plan of another network marketing company was discussed.

72.     USANA based its termination on Policy 3.6 of the Policies and Procedures as they were in place at that time.  Importantly, these policies and procedures were not in place at the time Johnson contracted with USANA in 1997.

73.     USANA did, however, "offer" to rescind its termination of Johnson's distributorship if she made a "voluntary" and public reassurances of her commitment to USANA despite her never having joined another network marketing company or recruiting anyone to a competing network marketing company.

74.     By terminating Johnson's distributorship without cause, USANA breached the Contract.

75.     At the time USANA breached the Contract with Johnson, Johnson was earning approximately $3,000 per week although she had previously earned approximately $600,000 per year through her USANA distributorship.

76.     As a result of USANA's breach of the Contract, Johnson is entitled lost commissions, both past, present, and future, consequential damages as a result of USANA's breach in an amount to be proved at trial as most of the information is in the possession of Defendants but in no event less than $936,000.00 for past damages, costs of suit and a reasonable attorney fee.

**FOURTH CAUSE OF ACTION**
**Fraudulent Concealment**

77.     Johnson realleges and incorporates by reference the allegations set forth in the paragraphs 1 through 76.

78.     Johnson, until recently, could not have discovered, by the exercise of reasonable diligence, that Defendants had engaged in the violations alleged in this Complaint since Defendants and their co-conspirators fraudulently concealed these violation so as to obscure their

illegal activity.

79.     Johnson could not have discovered the contract, combination and/or conspiracy of Defendants at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques secretly employed by Defendants to avoid detection thereof, and to fraudulently conceal their contract, combination and/or conspiracy and other illegal acts.

80.     The affirmative actions of the Defendants described in this Complaint were wrongfully concealed and carried out in a manner that precluded detection.

81.     Defendants engaged in a successful, illegal antitrust conspiracy that, by its nature, was inherently self-concealing.

82.     By virtue of the fraudulent concealment by Defendants and their co-conspirators, the running of any statute of limitations has been tolled and suspended with respect to any claims that Johnson has as a result of the illegal acts alleged in this instant action.

83.     As a direct result of Defendants' fraudulent concealment, Johnson has suffered substantial loss and damage to her trade and business, in an amount to be proven at trial, and is entitled to recover damages and costs of suit, including reasonable attorneys' fees.

**FIFTH CAUSE OF ACTION**
**Fraud in the Inducement**

84.     Johnson realleges and incorporates by reference the allegations set forth in the paragraphs 1 through 83.

85.     Johnson, until recently, could not have discovered, by the exercise of reasonable diligence, that Defendants had engaged in the violations alleged in this Complaint since Defendants and their co-conspirators fraudulently concealed these violation so as to obscure their illegal activity.

86.     Johnson could not have discovered the contract, combination and/or conspiracy of

Defendants at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques secretly employed by Defendants to avoid detection thereof, and to fraudulently conceal their contract, combination and/or conspiracy and other illegal acts.

87.     The affirmative actions of the Defendants described in this Complaint were wrongfully concealed and carried out in a manner that precluded detection.

88.     Defendants engaged in a successful, illegal antitrust conspiracy that, by its nature, was inherently self-concealing.

89.     By virtue of the fraud in the inducement by Defendants, the running of any statute of limitations has been tolled and suspended with respect to any claims that Johnson has as a result of the illegal acts alleged in this instant action.

90.     Johnson was fraudulently induced to enter into the Contract that USANA later changed without consideration, notice or opportunity to negotiate to include more onerous and restrictive terms to retain the personal contact information of individuals, i.e., cell phone numbers and personal e-mail addresses, who engage in network marketing as a primary vocation in the U.S. Market and restrict the movement of Johnson and others by making the personal contact information of distributors confidential and precluding Johnson, and others, from contacting USANA distributors from competing network marketing opportunities.

91.     As a direct result of Defendants' fraud in the inducement, Johnson has suffered substantial loss and damage to her trade and business, in an amount to be proven at trial, and is entitled to recover damages and costs of suit, including reasonable attorneys' fees.

### SIXTH CAUSE OF ACTION
**Declaratory Judgment**

92.     Johnson realleges and incorporates by reference the allegations set forth in the paragraphs 1 through 91.

93.     USANA enrolls new distributors under a specified set of policies and procedures accompanying the distributor agreement.

94.     USANA later and without input, consideration, or right to negotiation, changes the policies and procedures to institute more onerous and restrictive policies and procedures to prevent distributors from leaving USANA and/or allowing any terminated or voluntary departing distributors to recruit or solicit other USANA distributors.

95.     USANA's practice of changing policies and procedures is in violation of law.

96.     Johnson requests this court declare, as a matter of law, that USANA's pattern and practice of changing policies and procedures without notice, consideration, or right to negotiate is unlawful.

WHEREFORE, Johnson prays as follows:

1.      On Johnson's First Cause of Action, that the complained contract, combination or conspiracy and the acts done in the furtherance thereof by Defendants be adjudged to be in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; that the running of any statute of limitations with respect to any claims that Johnson has as a result of the illegal acts alleged in this instant action against Defendants has been tolled and suspended; that Defendants be held jointly and severally liable therefor; and that Johnson recover damages in an amount proved and to be trebled as provided by law.

2.      On Johnson's Second Cause of Action, that the complained contract, combination or conspiracy and the acts done in the furtherance thereof by Defendants be adjudged to be in violation of the Utah Antitrust Act; that the running of any statute of limitations with respect to any claims that Johnson has as a result of the illegal acts alleged in this instant action against Defendants has been tolled and suspended; that Defendants be held jointly and severally liable

therefor; and that Johnson recover damages as proved as provided by law.

3.      On Johnson's Third Cause of Action, that the complained actions of Defendants be adjudged to constitute fraudulent concealment; that the running of any statute of limitations with respect to any claims that Johnson has as a result of the illegal acts alleged in this instant action against Defendants has been tolled and suspended; that Defendants be held jointly and severally liable therefor; and that Johnson recover damages as proved as provided by law.

4.      On Johnson's Fourth Cause of Action, that the complained actions of Defendants be adjudged to constitute fraud in the inducement; that the running of any statute of limitations with respect to any claims that Johnson has as a result of the illegal acts alleged in this instant action against Defendants has been tolled and suspended; that Defendants be held jointly and severally liable therefor; and that Johnson recover damages as proved as provided by law.

5.      On Johnson's Fifth Cause of Action, that the complained actions of Defendants be adjudged to constitute breach of contract; that the running of any statute of limitations with respect to any claims that Johnson has as a result of the illegal acts alleged in this instant action against Defendants has been tolled and suspended; that Defendants be held jointly and severally liable therefor; and that Johnson recover damages as proved as provided by law but in an amount no less than the past damages of $936,000.

6.      On Johnson's Sixth Cause of Action, that this Court declare the complained actions of Defendants be adjudged to be unlawful; that the running of any statute of limitations with respect to any claims that Johnson has as a result of the illegal acts alleged in this instant action against Defendants has been tolled and suspended; that Defendants be held jointly and severally liable therefor; and that Johnson recover damages as proved as provided by law.

7.      Attorney fees and costs of suit.

8.        Punitive damages.

9.        For such other and further relief as the Court determines to be just and proper.

**<u>JURY DEMAND</u>**

Johnson hereby requests the matter be tried to a jury, pursuant Fed.R.Civ.P. 38(b).

DATED this 20th day of June, 2017.

Respectfully Submitted,


*/s/ James L. Colvin, III*
James L. Colvin, III, OBA No. 20654
7134 S. Yale Avenue, Suite 900
Tulsa, Oklahoma 74136
Telephone:      (918) 494-5905
Facsimile:       (918) 494-2847
jcolvin@secresthill.com

*ATTORNEY FOR PLAINTIFF*